# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MEDICAL PROVIDERS FINANCIAL
CORPORATION II, *et al.*,

      Plaintiffs,

v.

NEW LIFE CENTERS, L.L.C., *et al.*,

      Defendants.

Case No. 2:07-CV-01618-KJD-PAL

**ORDER**

      Presently before the Court is Plaintiffs' Motion for Summary Judgment (#72). Defendants filed a response in opposition (#78) to which Plaintiffs replied (#79).

I. Facts

      On or about September 1, 2005, Plaintiffs and Defendants entered into a Purchase Agreement ("the Agreement") in which Plaintiffs Medical Providers Financial Corporation II ("MPFC II") purchased accounts receivable from Defendants for a discounted fee. The amount paid to Defendants under the Agreement, for the purchased accounts receivable, is a percentage of the Adjusted Value or Estimated Net Return of the accounts receivable.

      The Agreement further provided that MPFC II had the right to purchase additional accounts from Defendant New Life for a period of one year beginning September 1, 2005 and ending

September 1, 2006.   Under the terms of the Agreement, if New Life failed to collect on the accounts receivable MPFC II purchased causing the accounts not to reach an Adjusted Value previously agreed to, Defendants would be liable to Plaintiffs for the difference between the amount actually collected and the Adjusted Value.  See, Plaintiffs' Motion for Summary Judgment (#72), Exhibit ("Ex.") 1, Ex. A, Purchase Agreement, Section 2.2(b).  All payments received on accounts receivable purchased by MPFC II were to be sent to a lockbox specified by Plaintiffs within one day of receipt by New Life.

Additionally, Defendants granted to Plaintiffs, a security interest for their obligations under the Agreement as "a first lien upon and perfected security interest in all accounts receivable of [Defendant New Life][.]" See Purchase Agreement, Section 2.4.  Plaintiff filed a UCC-1 with the Utah Secretary of State for all accounts receivable of New Life in order to perfect its security interest.

On or about August 25, 2005, Defendant Ilya Gonta ("Gonta") executed a guaranty agreement in favor of Plaintiffs.  Defendant Addison Larreau ("Larreau") also executed a guaranty agreement (together "the Guarantees").  New Life failed to collect on the purchased accounts receivable up to the amount of the Adjusted Value and became indebted to Plaintiffs in the amount $42,822.27 in November 2005.  In order to continue the relationship, New Life executed a promissory note ("the Note") in the amount of $42,822.27 at an annual interest rate of eighteen percent (18%) payable in twenty-four (24) months.  Defendants Gonta and Larreau executed personal guaranties on the Note.

The terms of the Note allowed Plaintiffs to withhold amounts due and owing under the Note from the Advance Rate under the Agreement to be paid for subsequent accounts receivable purchases.  Defendants continued to fail to collect on accounts receivable to the Adjusted Value amount.  Plaintiffs have collected on the security provided to them and the purchased accounts receivable to the amount of $226,006.06.  Plaintiffs are still owed the total amount of $427, 811.10 consisting of: (1) the amount owed on the Note; (2) the difference between the Adjusted Value and the amount actually realized by Plaintiffs; (3) the fees owed to Plaintiffs for accounts receivable purchased; and (4) the interest accrued thereon under the terms of the Agreement and the Note.

2

II.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party.  See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy.  O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

3

1  bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted

2  if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

3  III.  Analysis

4      Plaintiffs have now moved for summary judgment on their claims for breach of contract

5  based upon the Agreement, breach of the Guaranties, breach of the covenant of good faith and fair

6  dealing, unjust enrichment, and conversion.  Additionally, as Counterdefendants, Plaintiffs seek

7  summary judgment on all of Counterclaimants claims for relief.

8      A.  Breach of the Agreement and Guaranties

9      Contracts are construed from the written language of the document and enforced as written.

10  Ellison v. Cal. State Auto. Ass'n, 797 P.2d 975, 977 (Nev. 1990).  Nevada law requires plaintiffs in

11  breach of contract actions to demonstrate "(1) the existence of a valid contract, (2) a breach by the

12  defendant, and (3) damage as a result of the breach." Saini v. Int'l Game Tech., 434 F. Supp.2d 913,

13  919–920 (D.Nev. 2006) (quoting Richardson v. Jones, 1 Nev. 405 (Nev. 1865)).  Specifically,

14  "failure to perform one's obligations within the express terms of an agreement constitutes a literal

15  breach of contract." Id. at 923.

16      In their motion for summary judgment, Plaintiffs assert that New Life breached the

17  Agreement by failing to pay the difference between the Adjusted Value of purchased accounts

18  receivable and the actual amount collected as required by section 2.2(b) of the Agreement, and by

19  failing to make payments on the Note.  In Defendants' opposition to the motion for summary

20  judgment and in the affidavit of Ilya Gonta, a managing member of New Life, Defendants assert that

21  genuine issues of material fact exist regarding which party breached the contract for the following

22  reasons: 1) MPFC II agreed to purchase accounts receivable, but failed to pay New Life the amount

23  agreed to; 2) MPFC II collected and retained money for accounts receivable that it had not

24  purchased; 3) MPFC II held itself out as New Life in order to fraudulently collect money from third-

25  party insurance companies for accounts receivable it had not purchased; and 4) MPFC II did not

26

4

1    accurately account for the receivables obtained from purchased accounts inflating the amount of

2    money New Life owed MPFC II.

3        However, "uncorroborated and self-serving testimony," without more, will not create a

4    "genuine issue" of material fact precluding summary judgment. Villiarimo, 281 F.3d at 1061.

5    Conclusory or speculative evidence will not suffice to stave off summary judgment.  See Anheuser-

6    Busch, 69 F.3d at 345; Apple Computer, 792 F.2d at 1467.   In this instance, Gonta's affidavit

7    contains inadmissible hearsay evidence and fails to identify any specific account receivable that

8    MPFC II agreed to purchase but failed to pay for, any specific, admissible evidence that MPFC II

9    collected money for accounts receivable which it had not purchased, any specific instance in which

10   MPFC II held itself out as New Life without authorization,[1] or any specific instance of inaccurate

11   accounting.[2]  These mere allegations that factual issues exist are not enough to create genuine issues

12   of material fact that require resolution by a trier of fact.  See Celotex, 477 U.S. at 322; Taylor v. List,

13   880 F.2d 1040, 1045 (9th Cir. 1989)(non-movant cannot rely solely on conclusory allegations

14   unsupported by factual data)(statements must "be made on personal knowledge, not information and

15   belief").   Gonta's affidavit asserting that Plaintiffs collected insurance proceeds that it did not report

16   as money received on an account receivable was not made on personal knowledge.  Furthermore,

17   Gonta's belief that the amount that Plaintiffs claim is "grossly overstated and does not take into

---

18

19      [1]The Agreement, section 5.5(a), granted Plaintiffs a power of attorney to act on New Life's behalf in order to

20   collect on accounts receivable including the power to open mail addressed to New Life, to endorse checks made payable
     or endorsed to New Life, to receive mail for New Life at Plaintiffs' address, to pay, settle, compromise, prosecute or
     defend any action, claim, conditional waiver, and release, and to do all things necessary and proper to carry out the

21   Agreement.

22      [2]To the extent that Defendants object to the affidavit of the Receiver as not being made on personal knowledge,

23   the Court disagrees that the Receiver has failed to properly authenticate the documents submitted with his affidavit and in
     support of the motion for summary judgment.  All of the records fall under the business records exception to the hearsay

24   rule.  See Federal Rule of Evidence 803(6).  Furthermore, Defendants have, in fact, referenced and relied upon the
     Agreements and Guaranties at issue in this case.  They have not asserted the attached contracts do not accurately

25   reflect the agreement between the parties.  Finally, the fact that the Securities and Exchange Commission obtained a
     preliminary injunction and Order appointing a Receiver for Plaintiffs does not automatically create issues of fact

26   regarding the accuracy of the records at issue in this action.  Defendants must identify the specific facts that are called
     into question not just rely on their conclusory allegations.

1   account monies for which MPFC was paid, but has not disclosed" without more does not sufficiently

2   raise genuine issues of material fact.  Therefore, the Court must grant Plaintiffs' motion for summary

3   judgment on the breach of the Agreement.

4         Plaintiffs have also moved for summary judgment asserting that Gonta and Larreau breached

5   the Guaranties by failing to pay under their terms.  Defendants Gonta and Larreau have adduced no

6   evidence that raises a genuine issue of fact regarding their individual liabilities arising from the

7   personal guaranties that each of them signed.  However, while Gonta's affidavit asserts that he

8   signed the guaranty under "duress", Defendants' opposition never asserts that the guaranty is invalid

9   or voidable.  Accordingly, the Court must grant Plaintiffs' motion for summary judgment on the

10  claim for breach of the Guaranties.

11        B.  Implied Covenant of Good Faith and Fair Dealing

12        "Every contract imposes upon each party a duty of good faith and fair dealing in its

13  performance and its enforcement."  A.C. Shaw Const., Inc. v. Washoe County, 784 P.2d 9, 10 (Nev.

14  1989).  However, the question of good faith is a question of fact.  Id. at 11.  "When one party

15  performs a contract in a manner that is unfaithful to the purposes of the contract and the justified

16  expectations of the other party are thus denied, damages may be awarded against the party who does

17  not act in good faith."  Hilton Hotels Corp. v. Butch Lewis Prods., Inc. 808 P.2d 919, 923-24 (Nev.

18  1991).  Having granted Plaintiffs' motion for summary judgment on the breach of contract claims,

19  the Court finds that Defendants have failed to show that genuine issues of material fact prevent the

20  Court from granting summary judgment on this claim and grants Plaintiffs' claim for contract

21  damages arising from breach of the covenant.

22        C.  Unjust Enrichment and Conversion

23        Plaintiffs, in the alternative, allege a cause of action for unjust enrichment.  While pleading

24  conflicting causes of action is not inappropriate, in Nevada "[t]he doctrine of unjust enrichment or

25  recovery in quasi contract applies to situations where there is no legal contract[.]"  See Leasepartners

26  Corp., Inc. v. Robert L. Brooks Trust, 942 P.2d 182, 187 (Nev. 1997).  Additionally, an action may

1    not be based on unjust enrichment where there is an express written agreement.  See Id.  In the

2    present case, the Court has found that express written agreements between Plaintiffs and New Life

3    and Plaintiffs and Gonta and Larreau exist and that the contracts were breached by Defendants.

4    Accordingly, Plaintiffs' claim for relief under the theory of unjust enrichment must be dismissed

5    because there exists an express agreement covering the claim.

6         Furthermore, under Nevada law, conversion occurs when a person exerts wrongful dominion

7    over another's personal property without permission.  See Evans v. Dean Witter Reynolds, Inc., 5

8    P.3d 1043, 1048 (Nev. 2000).  "Though money or a check could in some circumstances be the

9    subject of conversion...the tort traditionally involves wrongful taking and carrying away of

10   something tangible."  Reliance Ins. Co. v. U.S. Bank of Wash., N.A., 143 F.3d 502, 506 (9th Cir.

11   1998).  Under these definitions, Defendants have not converted or taken possession of any personal

12   property previously owned by Plaintiffs.  Accordingly, the Court denies Plaintiffs' motion for

13   summary judgment on these claims and they are dismissed.

14        D.  Defendants/Counterclaimants' Claims

15        Plaintiffs/Counterdefendants have also moved to dismiss Counterclaimants' independent

16   claims for relief: 1) breach of contract; 2) breach of the implied covenant of good faith and fair

17   dealing; 3)unjust enrichment; and 4) conversion.  Having granted Plaintiffs' motion for summary

18   judgment on the first two claims, breach of contract and the covenant of good faith, the Court must

19   also grant MPFC II's motion for summary judgment on the counterclaims, because Defendants New

20   Life, Gonta and Larreau have simply failed to adduce specific evidence demonstrating that there are

21   genuine issues of material fact that require resolution at trial.  Additionally, the Court having found

22   that the dispute at issue in this action is covered by an express written agreement, Counterclaimants'

23   claim for unjust enrichment must be dismissed.  Finally, the claim for conversion must be dismissed

24   because Counterclaimants have identified no specific, tangible personal property that they were

25   deprived of.  Finally, Counterclaimants' claims for an accounting and constructive trusts are

26

7

1  remedies and must be dismissed with the other counterclaims.  Therefore, the Court grants

2  Counterdefendants' motion for summary judgment on the counter-claims.

3       E.  Plaintiffs' Remaining Claims

4       Plaintiffs asserted additional claims for negligent misrepresentation, monies due and owing,

5  and declaratory relief as well as causes of action for the remedies of an accounting, having a receiver

6  appointed for New Life, and a constructive trust.  Within ten (10) days of the entry of this order

7  granting summary judgment, Plaintiffs shall file notice with the Court whether they intend to proceed

8  to trial on the remaining claims or voluntarily dismiss them.  Furthermore, Plaintiffs shall notify the

9  Court if they seek remedies in addition to the monetary damages awarded by the Court.

10  IV.  Conclusion

11       Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment

12  (#72) is **GRANTED in part and DENIED in part**;

13       IT IS FURTHER ORDERED that Plaintiffs' claims for unjust enrichment and conversion are

14  **DISMISSED**;

15       IT IS FURTHER ORDERED that the Court grants Plaintiffs' motion for summary judgment

16  on Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair

17  dealing and breach of the personal guaranties;

18       IT IS FURTHER ORDERED that Counterclaimants' counterclaims are **DISMISSED with**

19  **prejudice**;

20       IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Plaintiffs

21  and against Defendants in the amount of $427,811.10;

22  ////

23  ////

24  ////

25  ////

26  ////

1    IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Counter-

2  defendants and against Counterclaimants.

3    DATED this 4th day of March 2011.

4

5

6    _____

7    Kent J. Dawson
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26